PEOPLE'S FINANCE CORPORATION v. JENNIE C. BUCKNER, Executrix of Estate of GEORGE W. BUCKNER, Appellant.—126 S. W. (2d) 301.

Division Two, March 15, 1939.

*Charles Perry Schafer* for appellant.

*Silas E. Garner* and *McLemore & Witherspoon* for respondent.

WESTHUES, C.—Appellant's statement of the case, which we adopt, reads as follows:

"This is a suit which originated in the Probate Court of the City of St. Louis, Missouri, through a claim filed by the People's Finance Corporation against the estate of George W. Buckner, deceased, for $10,924.49, founded upon an account for money loaned to the deceased.

"Jennie C. Buckner, executrix of the estate of George W. Buckner, deceased, filed a counterclaim to this claim, claiming that George W. Buckner entered into a contract with the People's Loan and Finance Company, predecessor to People's Finance Corporation, which provided among other things that the said Buckner was to receive a basic salary of $250 per month as general manager of said company; that said basic salary was to be increased $30 per month when the outstanding loans of said company amounted to $70,000, and an additional 3/10 of one per cent per month upon each thousand dollar increase of outstanding loans over $70,000, that the total outstanding loans of said company greatly exceeded $70,000, and as a result of said excess of loans outstanding, George W. Buckner became entitled under said contract to additional payments in the sum of $29,070. Thereupon, after motions to strike the counter-claim had been filed, the Probate Court allowed the claim of the claimant in the sum of $4,478.93 and awarded judgment to the counter-claimant of her counter-claim, after deducting $4,478.93, in the sum of $21,603.

"Whereupon, the People's Finance Corporation appealed the case to the St. Louis Circuit Court where a trial before a jury was had, resulting in an instructed verdict in favor of the plaintiff on its claim of $4,478.93, and an instruction given by the Court to the jury to find in favor of plaintiff on defendant's counter-claim. At this point the defendant asked and was granted leave to take an involuntary non-suit on the counter-claim, with leave to file a motion to set the same aside. Subsequently, defendant's motion for a new trial was filed and overruled and defendant's motion to set aside the non-suit and for a new trial of her counter-claim was overruled.

"To support her counter-claim, appellant offered in evidence a stipulation executed between her and the People's Finance Corporation, providing that the People's Loan and Finance Company did

enter into a contract with George W. Buckner, a copy of which was attached, and that after the formation of the People's Finance Corporation George W. Buckner continued to act as manager, as he had with the People's Loan and Finance Company until on or about January 15, 1928; that the People's Finance Corporation admitted its liability for all the contracts and obligations entered into by its predecessor, the People's Loan and Finance Company, and that the amount of loans made by the company were set forth by months and years. She offered in evidence the employment contract."

It was agreed at the trial that the deceased owed the plaintiff corporation a balance of $4,478.93. Judgment was entered in plaintiff's favor for that amount. At the trial the question in dispute was over defendant's counterclaim. The question here now on appeal is, was the trial court justified in directing a verdict for plaintiff on the counterclaim? Defendant had the burden of proving her claim by a preponderance of the evidence. Respondent contended that the evidence introduced by the defendant showed that the deceased had breached his contract and did not consider it in force, and that therefore the directed verdict in plaintiff's favor was proper. The portions of the contract alleged to have been breached read as follows:

"First—Party of the first part hereby contracts and agrees to give his whole time and devote his sole business energies to the work and conduct of the business of party of the second part for a period of Five (5) years from the date hereof and as long thereafter as said services may be continued by mutual consent.

"Second—Party of the first part agrees that he will not actively engage in any other business or accept any other employment which shall in any way interfere with his duties as said manager."

The contract was dated October 17, 1922. The evidence disclosed that the business of the company grew rapidly. In January, 1924, the amount of loans in force was over $124,000; in January, 1925, over $220,000; in January, 1927, the peak was reached and the loans were then over $229,000. The record shows that from that time on there was a steady decline. Respondent, plaintiff below, conceded that if the contract had been enforced and not breached by the deceased a large sum would have been due on the counterclaim. The evidence disclosed that deceased was in active charge of the affairs of the company from the year 1922 to 1928. He received a salary of $250 per month. The deceased at no time was paid the additional salary of $30 per month, or the commission of three-tenths of one per cent upon each $1,000 increase of outstanding loans over $70,000, as provided for in the contract. He at no time made a demand for the additional compensation. The evidence, which plaintiff claimed showed that deceased breached the contract and therefore never demanded the increase in salary, was as follows: The deceased bought an apartment house containing thirty-two apartments. This building

was placed in charge of a manager, but the deceased spent at least some time in looking after his interest in this enterprise. He was a member of a fiscal agency which sold the stock of the plaintiff corporation when it was increased from time to time. This fiscal agency received a commission of twenty per cent on sales of stock, leaving eighty per cent net to the company. Deceased received substantial sums on these sales. There was evidence that he owned and supervised the operation of a drug store, under the name of Simms Drug Store, located at Twenty-ninth and Market Streets, St. Louis, Missouri. He was also interested in a shoe store. He received $750 for services in organizing a company in Kansas City, Missouri, similar to the plaintiff corporation. He also aided in forming such corporations in Cleveland, Ohio, and Newark, New Jersey. In one case he received the sum of $1600 for devoting a week's time to this work. All of the above facts were disclosed by the evidence introduced on behalf of the defendant.

It is evident from the above evidence that the deceased, in violation of the contract of employment, engaged in other business and accepted other employment for gain and did not devote his entire time and energy to the company's business. The trial court was therefore justified in directing a verdict for the plaintiff on the defendant's counterclaim. It is elementary law that a directed verdict is proper where a plaintiff (defendant in this case was a plaintiff as to his counterclaim) in proving his case introduces evidence which destroys his cause of action. This rule is often applied in negligence cases where plaintiff's evidence shows that he was guilty of contributory negligence as a matter of law. [45 C. J. 1177, sec. 758, and cases there cited.] A written contract may be abandoned by the conduct of parties. [Seligman v. Rogers, 113 Mo. 642, 21 S. W. 94, l. c. 98; Creamery Package Mfg. Co. v. Sharples Co., 98 Mo. App. 207, 71 S. W. 1068.] Where a party has received material benefits through an abandonment of a contract he cannot insist on the enforcement of the contract. In this case the deceased engaged in business and accepted employment for which he received substantial sums in violation of his agreement to devote all of his time and energy to the plaintiff corporation. This was shown by the defendant's evidence and therefore the judgment of the trial court in directing a verdict against defendant must be sustained. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.